UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | Nos. 6:14-CR-09-CHB-HAI-1 & |
| v. ) | 6:22-CR-39-CHB-HAI-1 |
| ) | |
| ANTHONY DEWAYNE SMITH, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom, the Court considers reported violations of supervised release conditions by Defendant Anthony Dewayne Smith. Defendant has been on supervised release in two separate cases.

In the first case, 6:14-CR-09, District Judge Van Tatenhove entered Judgment against Defendant in November 2014 after he pleaded guilty to one count of being a felon in possession of a firearm. Defendant was sentenced to 180 months of imprisonment (the statutory minimum under the Armed Career Criminal Act) followed by five years of supervised release. Smith appealed, and the Court of Appeals found that one of Defendant's ACCA predicate convictions did not qualify for the ACCA enhancement. Upon remand, Defendant was resentenced to 120 months' imprisonment with three years of supervision. The conviction went from a Class A felony to a Class C felony. The 2014 case has now been reassigned to District Judge Boom.

In the second case, 6:22-CR-39, Judge Boom entered Judgment against Defendant in March 2023 after he pleaded guilty to one count of escape from federal custody. Defendant was sentenced to fifteen months of imprisonment followed by eighteen months of supervised release.

Defendant was released on November 7, 2023. He was immediately referred to Manchester Family Clinic for substance abuse counseling.

## I.

On February 5, 2024, the United States Probation Office ("USPO") issued the Supervised Release Violation Reports ("the Reports") that initiated these proceedings—a separate Report for each criminal case. The Reports charge four violations. According to the Reports, on January 5, 2024, Defendant produced a urine sample that tested positive, upon instant testing, for methamphetamine and amphetamine. Defendant denied any meth use. Lab results confirmed the sample was positive for meth.

Based on these facts, Violation #1 charges a violation of the condition that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that he not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Reports go on to describe a second use of methamphetamine. According to the Reports, on February 1, 2024, Defendant again produced a urine sample that tested positive, upon instant testing, for methamphetamine and amphetamine. This time, Defendant signed a form admitting that he had used methamphetamine on or about January 31, 2024.

Based on these facts, Violation #3 charges a violation of the condition that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C violation.

Violation #4 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that he not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #4 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Defendant was arrested and appeared in Court on February 22, 2024. D.E. 78. Because Defendant was too ill to proceed at that time, the initial appearance was continued, and the Court conducted the initial appearance pursuant to Rule 32.1 on February 26, 2024. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on May 10, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. He admitted he had knowingly used methamphetamine prior to both drug tests. The United States thus established Violations #1-4 under the standard of section 3583(e).

3

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section-3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Here, both convictions are Class C felonies. There is an error in the Report for the 6:14-CR-09 case. Although Defendant was initially sentenced for a Class A (ACCA-enhanced) felony, the Sixth Circuit vacated that conviction, and Defendant was ultimately sentenced for a Class C (non-ACCA-enhanced) felony. Defendant's escape conviction in the 2022 case is also a Class C felony. The statutory and Guideline penalty ranges in both cases are thus identical. A Class C felony conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #3 and a Grade B violation for Violations #2 and #4. Given Defendant's criminal history category of VI (the category at the time of both convictions in this District) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). However, the two-

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

year statutory cap described in the previous paragraph yields an effective Guidelines Range of 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Here, the maximum term under both convictions is three years, minus any term of imprisonment imposed upon revocation. *See* 18 U.S.C. § 3583(h).

### III.

At the final hearing, the government requested revocation with 21 months of imprisonment, followed by twelve months of supervision. The defense requested fourteen months' imprisonment, with no supervision to follow. The Court recommends 21 months of imprisonment, followed by the maximum available supervision term, fifteen months.

The government stressed the need for deterrence and argued there was no justification for a below-Guidelines sentence. The government gave Defendant credit for admitting his second meth usage and stipulating to the violations. The government acknowledged this was Defendant's "technically first violation," and granted that the revocation conduct (meth usage) was not related to the underlying gun-possession and escape convictions.

However, Defendant's "pretty terrible" criminal history includes some drug-related crimes and numerous property crimes, the type of which are usually committed to support a drug habit. The escape conviction was particularly concerning in this context. While Defendant was technically in BOP custody, he was on home detention with an ankle monitor. After about five months, he cut the monitor off and absconded. This shows his potential for noncompliance and dangerousness. His meth use is also dangerous in that it involves contact with the black market. Here, Defendant had been on release less than three months before he started using meth.

The defense stressed Defendant's challenging circumstances. Defendant had been in a significant vehicle accident that broke his back and left him with terrible ongoing back pain. He also lost a custody battle over his daughter. His pain and grief caused him to turn to meth. Being in jail has been very difficult for him. He has been taken to UK hospital three times while these charges were pending. His disabilities (including the need for continuing HIV treatment) make imprisonment much more difficult than normal, thereby enhancing the deterrent effect of any amount of incarceration. As for danger, the defense suggested Defendant's meth use is more of a danger to himself than to anyone else. The defense requested placement at FMC Lexington and drug treatment while incarcerated.

The requested fourteen-month penalty was based on how Defendant's back pain, anxiety, and depression make imprisonment especially onerous. As for continuing supervision, the defense argued that there would not be enough time available for sufficient USPO-provided treatment. Defendant would do better to find his own program, such as those offered by Operation Unite. Further, the defense did not expect Defendant to be compliant with supervision, so those resources could be better used elsewhere. The defense was concerned Defendant, in his current state, was likely to commit a "technical violation" or get himself in trouble when he has a "bad day."

Defendant declined to address the Court concerning the recommended penalty.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also*

*United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). In the 2014 case, the PSR reports that Defendant was arrested in connection with an investigation into a residential burglary. He was in possession of a pistol and a revolver, the latter of which had been stolen during the burglary. He had multiple prior felony convictions and was initially sentenced as an Armed Career Criminal (though that status was reversed on appeal). The 2022 case occurred after Defendant was transferred from prison to a halfway house in Manchester. He was allowed to serve part of his sentence on home confinement with electronic monitoring. However, that home confinement privilege was terminated due to failure to comply. He was instructed to return to the halfway house. Instead, he cut off his monitoring bracelet and absconded. He was arrested three weeks later. While Defendant's meth use is not directly related, it is part of a pattern of lack of respect for the law and for restrictions placed on him by

the justice system. The fact that he cut off an ankle monitor and fled is relevant to how he can be expected to behave on supervision.

The Court next considers Defendant's history and characteristics. Defendant has a criminal history category of VI, which drives his high Guidelines Range. He is on release for two felonies. And, while on release, he has twice committed the federal felonies of methamphetamine possession. Defendant lied the first time he was caught, which gave him time to use meth a second time while the USPO sought confirmation of the instant test. Again, his history and characteristics show a lack of respect for the Court and the law. The Court acknowledges Defendant's medical and emotional issues. But many defendants face the Court with serious health problems. So, this is not an appropriate mitigating factor. Instead, Defendant's pain and grief have made him more dangerous, as they gave him reason to self-medicate with an illicit drug.

Two other factors, the need to deter criminal conduct and protect the public, are acute in this case. Defendant had absconded before. His criminal history is troubling. He was not on supervision long before committing two more federal felonies. His history of crimes, which continues into the current year, counsel in favor of significant incarceration and supervision.

Another factor focuses on opportunities for education and treatment. Defendant was already receiving substance-abuse counseling. He can be reevaluated for treatment after release, and neither side requested imposition of new conditions.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the

seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's breach of trust is aggravated by his initial dishonesty. He denied meth use on January 5, used meth again, and then admitted his second use on February 1. The trust breach is aggravated by there being two usages which occurred less than three months after his release.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the Court cannot find a specific reason for varying downward. In fact, Defendant's Guidelines Range is lenient, given that it is truncated by the two-year statutory maximum. Defendant is also facing a single revocation proceeding for two meth usages almost a month apart.

Defendant is suffering, but meth is not the answer. Further drug use will only lead to more imprisonment or death. Given Defendant's dangerousness, imposition of the maximum available supervision period is needed to deter his criminal behavior and protect the public.

Based on the foregoing, the Court **RECOMMENDS**:

1.      That, upon his stipulation, Defendant be found guilty of all four violations.

    2.       Revocation with a term of imprisonment of 21 months, followed by fifteen months of supervised release on the conditions previously imposed.

    3.       That Defendant be placed in the facility closest to his home.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 13th day of May, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge