UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY DEWAYNE SMITH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Nos. 6:14-CR-09-CHB-HAI-1 &<br>6:22-CR-39-CHB-HAI-1<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

On referral from District Judge Boom, the Court considers reported violations of supervised release conditions by Defendant Anthony Dewayne Smith. Defendant has been on supervised release in two separate cases. This is his second revocation in both.

In the first case, 6:14-CR-09, District Judge Van Tatenhove entered Judgment against Defendant in November 2014 after he pleaded guilty to one count of being a felon in possession of a firearm. Defendant was sentenced to 180 months of imprisonment (the statutory minimum under the Armed Career Criminal Act), followed by five years of supervised release. Smith appealed, and the Court of Appeals found that one of Defendant's ACCA predicate convictions did not qualify for the ACCA enhancement. Upon remand, Defendant was resentenced to 120 months' imprisonment with three years of supervision. The conviction went from a Class A felony to a Class C felony. The 2014 case has now been reassigned to District Judge Boom.

In the second case, 6:22-CR-39, Judge Boom entered Judgment against Defendant in March 2023 after he pleaded guilty to one count of escape from federal custody. Defendant was sentenced to fifteen months of imprisonment followed by eighteen months of supervised release.

# I.

Defendant was first released on November 7, 2023. He was immediately referred to Manchester Family Clinic for substance abuse counseling.

On February 5, 2024, the United States Probation Office ("USPO") reported four violations of conditions of release. First, on January 5, 2024, Defendant produced a urine sample that tested positive, upon instant testing, for methamphetamine and amphetamine. Defendant denied any meth use. Lab results confirmed the sample was positive for meth. Second, on February 1, 2024, Defendant again produced a urine sample that tested positive, upon instant testing, for methamphetamine and amphetamine. This time, Defendant signed a form admitting that he had used methamphetamine on or about January 31, 2024. Each positive result led to a charge of drug use and a charge of committing the crime of drug possession. Defendant ultimately admitted all four violations. He was sentenced to 21 months of imprisonment, with fifteen months of supervision to follow.

Defendant was released again on October 10, 2025.

# II.

On February 2, 2026, the USPO issued the Supervised Release Violation Reports ("the Reports") that initiated these proceedings—a separate Report for each criminal case. The Reports charge two violations. According to the Reports, "On January 23, 2026, Smith produced a urine sample which returned positive results for the presence of methamphetamine/ amphetamine. Smith signed a Positive Drug Test Admission Report admitting to use of methamphetamine."

Based on these facts, Violation #1 charges a violation of the condition that Defendant must refrain from unlawful use of a controlled substance. This is a Grade C violation.

Violation #2 charges a violation of the conditions prohibiting commission of a crime and unlawfully possessing a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Defendant ultimately stipulated to both these violations.

On March 9, 2026, the USPO issued an Addendum to the Report (actually one Addendum for each underlying case). The Addenda contain two additional violation charges, based on two underlying state cases. The government ultimately moved to dismiss these two violations. As reported in the Addenda, the underlying state charges were dismissed on March 5, 2026. The parties have reported the state charges had "evidentiary issues" and they were dismissed without prejudice.

As for Violation #3, the Addenda state, "On February 14, 2026, Smith was arrested in Owsley County, Kentucky, District Court Case 26-F-00007. He was charged with Convicted Felon in Possession of a Firearm (KRS 527.040, a Class D felony)." The accompanying citation explains that a search warrant was executed at Defendant's residence, and an unsecured firearm was found in a bedroom.

For Violation #4, the Addenda state, "On February 14, 2026, Smith was arrested in Owsley County, Kentucky, District Court Case 26-F-00008. He was charged with Fleeing or Evading Police in a Motor Vehicle, First Degree (KRS 520.095, a Class C felony) and Terroristic Threatening, Third Degree (KRS 508.080, a Class A misdemeanor)." According to the accompanying citation, police responded to a domestic-violence call that included a threat by Defendant to beat his girlfriend to death. Upon their arrival, Defendant fled in a motor vehicle.

Defendant appeared before Magistrate Judge Atkins for an initial appearance on all four violation allegations under Rule 32.1 on March 9, 2026 (the same date the Addenda was issued). D.E. 77. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention. Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal. *Id.*

On March 16, 2026, the government moved for a continuation of the final hearing on the basis that "an indictment on the underlying felon in possession charge" was likely. D.E. 79. District Judge Boom granted that motion and continued generally the final revocation hearing. However, months passed with no grand-jury indictment. On June 23, 2026, Defendant moved to set a final revocation hearing. D.E. 82. On July 16, Judge Boom granted that motion and referred the final hearing to the undersigned. D.E. 85.

At the final hearing on July 29, 2026, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. D.E. 88. For purposes of Rule 32.1 proceedings, Defendant admitted the factual bases for these Violations, as described in the Report. The government thus established Violations #1 and #2 under the standard of section 3583(e). The government also moved to dismiss Violations #3 and #4 and stated that the conduct underlying those violations did not factor into the government's recommended penalty.

**II.**

The Court has evaluated the entire record, the Reports, Addenda, and accompanying documents, and the sentencing materials from the underlying Judgments. Additionally, the Court has considered all the section 3553 factors imported into the section-3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised-release violation hinges on the gravity of the underlying offense of conviction. Here, the firearm conviction is a Class C felony and the escape conviction is a Class D felony. The statutory and Guideline penalty ranges in both cases are identical. A Class C or D felony conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violations #2, #3, and #4. Given Defendant's criminal history category of VI (the category at the time of both convictions in this District) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). However, the two-year statutory cap described in the previous paragraph yields an effective Guidelines Range of 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Here, original the maximum term under both convictions is three years. But he was incarcerated 21 months on the prior revocation. That leaves 15 months available, minus any term of imprisonment imposed upon revocation this time. *See* 18 U.S.C. § 3583(h).

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## III.

At the final hearing, the government stressed Defendant's "troubling" history of drug use. Defendant's PSR in the 2014 case indicated he was not addicted to any controlled substances. But his PSR in the 2022 case indicated regular use of heroin and pills, plus experimentation with meth. Defendant did not complete any drug abuse program while incarcerated. Instead, he is now being revoked—a second time—for methamphetamine use. Both times, he was only on release for three or four months before being caught with meth in his system. Defendant also carries a large Category VI criminal history that includes burglaries, assaults, resisting arrest, and escape. The government had no expectation Defendant can be successful on release. So, the government leaned on incarceration as a means of deterring criminal conduct and protecting the public.

The government's current recommendation of 21 months' incarceration resembles Defendant's prior revocation sentence of 21 months plus fifteen months of supervised release. Counsel for the government said Defendant should be given credit for both his signed admission to meth use and his stipulation to the violations. In the previous revocation, he had initially denied using meth. The dishonesty was an aggravator last time. But this time, the facts that this is a second revocation and that the drug use happened so soon after release aggravate the breach of the Court's trust.

The defense pointed out that Defendant has already been incarcerated six months. Its recommendation, that consumes fifteen months of Defendant's life, was based on the fifteen months that remain on Defendant's available post-revocation supervision time. The defense pointed out that, as evidenced by the "bed letter" filed on the day of the hearing (D.E. 87 in 6:22-CR-39), Defendant had reached out while in jail to arrange for drug treatment. The defense

stressed that, although Defendant had opportunities for treatment in the past, he had never used them. But he was ready to benefit from them now. The defense also reported that Defendant's brother died during his current incarceration and Defendant's father is in poor health. The defense thus suggested nine months of incarceration, followed by six months of inpatient treatment (which would technically be supervised release) would be appropriate.

The probation officer reported that Defendant had been receiving mental-health and substance-abuse counseling, but he was not sure of the frequency of those sessions. When given the urine test, Defendant told the officer it would be positive.

Defendant addressed the Court. He said he was trying to better his life and stay away from drugs. He had overdosed in the past, and suboxone therapy had saved his life. He asked for rehabilitation, not prison.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Both sides agreed this is a mandatory revocation case. And neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). In the 2014 case, the PSR reports that Defendant was arrested in connection with an investigation into a residential burglary. He was in possession of a pistol and a revolver, the latter of which had been stolen during the burglary. He had multiple prior felony convictions and was initially sentenced as an Armed Career Criminal (though that status was reversed on appeal). The 2022 case occurred after Defendant was transferred from prison to a halfway house. He was allowed to serve part of his sentence on home confinement with electronic monitoring. However, that home confinement privilege was terminated due to failure to comply. He was instructed to return to the halfway house. Instead, he cut off his monitoring bracelet and absconded. He was arrested three weeks later. While Defendant's meth use is not directly related, it is part of a pattern of lack of respect for the law and for restrictions placed on him by the justice system.

The Court next considers Defendant's history and characteristics. Defendant has a criminal history category of VI, which drives his high Guidelines Range. He is on release for two felonies. And, while on release, he has continued committing the felony of methamphetamine possession, resulting in the prior revocation and this one. His first time on release, Defendant lied the first time he was caught, which gave him time to use meth a second time while the USPO sought confirmation of the instant test. Now, he has returned again to meth

use after only three or so months on release. Again, his history and characteristics show a lack of respect for the Court and the law.

Two other factors, the need to deter criminal conduct and protect the public, are acute in this case. Defendant had absconded before. His criminal history is troubling. He has fared poorly on supervision. His history of crimes, which continues into the current year, counsel in favor of significant incarceration.

Another factor focuses on opportunities for education and treatment. Defendant is encouraged to pursue treatment in prison, if offered. But no further supervision will be available.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's second revocation for meth use.

At the final hearing, following announcement of the Court's decision, Defendant suggested that being off supervision is more important to him than receiving treatment. This could mean that his effort to obtain inpatient treatment and convince the Court of its utility was all a ruse, which is consistent with his refusal to pursue treatment in a meaningful way in the past. Whatever his true intent is now, his repeated breaches of the Court's trust warrant a significant term of imprisonment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and '"consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."' *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state '"the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]"' *Id.* (quoting 18 U.S.C. § 3553(c)(2)). Here, the Court cannot find a specific reason for varying downward. In fact, Defendant's Guidelines Range is lenient, given that it is truncated by the two-year statutory maximum.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.
2. That the government's motion to dismiss Violations #3 and #4 be granted.
3. Revocation with a term of imprisonment of 21 months. No additional supervised release is available.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 30th day of July, 2026.

**Signed By:**
***Hanly A. Ingram***
**United States Magistrate Judge**